## THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| NEISHA SARITA MAHARAJ, | : | |
| | : | Case No. 25-10715(AMC) |
| | : | |
| Debtor. | : | |
| | : | |
| POLICE AND FIRE FEDERAL CREDIT UNION, | : | |
| | : | |
| | : | |
| Plaintiff | : | Adversary No. 25-_____ (AMC) |
| v. | : | |
| | : | |
| NEISHA SARITA MAHARAJ, | : | |
| | : | |
| Defendant | : | |

### VERIFIED COMPLAINT

The Police and Fire Federal Credit Union ("PFFCU" or the "Plaintiff"), by and through its undersigned counsel, files this adversary complaint against Neisha Sarita Maharaj ("Maharaj" or the "Debtor") pursuant to 11 U.S.C. §523 seeking a determination that its claim against the Debtor is non-dischargeable.  PFFCU incorporates the Verification of Jeanette Smith ("Smith"), Bankruptcy Representative, attached hereto as Exhibit A, and states as follows:

### JURISDICTION AND VENUE

1.	This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

2.	Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

3.	This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

4.      This is an adversary proceeding brought under and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and Section 523 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

## PARTIES

5.      PFFCU is a federal credit union with a business address at 3333 Street Road, Bensalem, PA 19120.

6.      Defendant Neisha Sarita Maharaj is an individual who, upon information and belief, resides at 1431 Knightbridge Dr., Blue Bell, PA 19422.

## FACTUAL BACKGROUND

7.      On June 30, 2020, the Debtor applied for an auto loan with PFFCU with which she purchased a 2016 Dodge Ram 1500 SLT (the "Vehicle").   The amount financed was $34,537.87 (the "Auto Loan") and the co-borrower is listed as Marcus Antonio Blazemore.

8.      Section 2 of the June 30, 2020 Retail Installment Sale Contract (the "Loan Agreement") between PFFCU and the Debtor provides that the Debtor remains liable to pay the Auto Loan if the Vehicle is damaged, destroyed or missing and agrees not to transfer the Vehicle without PFFCU's permission.

9.      Section 2 further provides the Debtor's agreement not to expose the Vehicle to misuse, seizure or confiscation and requires the Debtor to name PFFCU as loss payee on the required insurance coverage to protect PFFCU's interests in the Vehicle.

10.     On February 24, 2025, the Debtor filed for Chapter 13 relief in the above-captioned bankruptcy case, listing PFFCU as a secured creditor on her Bankruptcy Schedule D, holding claim for the Auto Loan that is secured by the Vehicle, but listing the Vehicle's whereabouts as unknown.

11.     On March 24, 2025, PFFCU filed proof of claim #2, asserting a secured claim in the amount of $16,212.61, reflecting the remaining balance owed by the Debtor to satisfy the Auto Loan and including a deficiency claim for any balance remaining after a sale of the Vehicle.

12.     The Debtor objected to PFFCU's proof of claim #2, asserting that the Debtor did not know the whereabouts of the Vehicle on the Petition Date or thereafter because the co-debtor took the Vehicle and the Debtor was not aware of the location or condition of the Vehicle.

13.     Whether the Debtor knows the whereabouts of the Vehicle, however, does not excuse the Debtor from complying with her obligations under the Loan Agreement and the Bankruptcy Code, including naming PFFCU as loss payee on her automobile insurance policy.

14.     The facts and circumstances, moreover, show that the Debtor was aware of the whereabouts of the Vehicle and had sufficient information to submit an insurance claim to protect PFFCU's interest in the Vehicle, but refused to cooperate and submit a claim form because she did not want her insurance premiums to increase.

15.     Prior to filing for Chapter 13 relief, on June 3, 2024, the Debtor contacted PFFCU stating that her son and co-borrower, Marcus Bazemore, would not be making payments on the Vehicle and that she wanted PFFCU to pick up the Vehicle.  The Debtor was informed that she needed a letter signed by both borrowers requesting a voluntary surrender.  The Debtor stated that her son would not sign such a letter.

16.     On June 22, 2024, the Debtor called PFFCU stating that she was having a disagreement with her son who was refusing to make the past due payments or surrender the Vehicle.  The Debtor informed PFFCU that she will not be making the payments for the Vehicle to PFFCU.

17.     On July 2, 2024, PFFCU initiated the process to repossess the Vehicle, but was unsuccessful in locating the Vehicle.

18.     On July 27, 2024, the Debtor informed PFFCU that her son was hiding the Vehicle and, on October 22, 2024, the Debtor informed PFFCU that her son took the Vehicle to an unknown address in Atlanta.

19.     On or about February 25, 2025, the Debtor received an Alabama Department of Revenue, Unclaimed/Abandoned Notice of Termination indicating that the Vehicle was found abandoned in Alabama and was scheduled for auction March 14, 2024.  PFFCU received a similar notice.

20.     Upon information and belief, the Debtor took no action to redeem the Vehicle by contacting the person in possession of the Vehicle or otherwise.

21.     PFFCU immediately contacted the Debtor's insurance company, GEICO, to initiate a claim and arrange for GEICO to access the Vehicle, submitted an Order to Repossess to recover the Vehicle, and also made several attempts to contact the person in possession of the Vehicle to arrange for GEICO to have access to the Vehicle.

22.     Neither Debtor nor co-debtor filed a police report involving the Vehicle or a claim to GEICO, and PFFCU's request for photographs of the Vehicle from the person allegedly in possession of the Vehicle were ignored.

23.     On March 6, 2025, PFFCU received notice that the Debtor filed for Chapter 13 relief.

24.     On March 12, 2025, PFFCU was successful in reaching the person who was allegedly in possession of the Vehicle, who stated that he had the Vehicle for months at the

request of Marcus Bazemore who had asked him to tow the Vehicle to his shop for repairs and body work.

25.    On March 21, 2025, the Debtor contacted PFFCU regarding the insurance claim submitted by PFFCU to GEICO.

26.    On March 25, 2025, PFFCU was informed by GEICO that it had provided GEICO with the necessary documents and that GEICO would attempt to reach the Vehicle owner.

27.    On April 9, 2025, GEICO informed PFFCU that no claim had yet been paid but a delay letter had been sent to the Debtor and they would continue trying to reach the Debtor.

28.    On April 24, 2025, the Debtor contacted PFFCU asking whether it had the Vehicle.  Because the Debtor was in bankruptcy, PFFCU informed the Debtor what it knew about the Vehicle and informed her to discuss the matter with her attorney.

29.    On May 6, 2025, GEICO informed PFFCU that it was not listed as lienholder on the policy so GEICO was denying PFFCU's claim.

30.    On May 9, 2025, PFFCU received written authorization from Debtor's counsel, allowing PFFCU to discuss the Vehicle loan directly with the Debtor.

31.    On May 9, 2025, the Debtor contacted PFFCU and was advised that she can file a claim with GEICO.  The Debtor stated that she would speak with her attorney before doing anything and was concerned that GEICO would raise her rates if she filed a claim.

32.    As of July 16, 2025, the CarFax Vehicle History Report for the Vehicle shows no accident or damage having been reported for the Vehicle other than a minor sideswipe in 2020, but does show the transfer of ownership in 2025 as a result of the "auction", with updated mileage.

33.     Upon information and belief, GEICO sent a claim form to the Debtor to be completed in connection with the Vehicle; however, GEICO reported to PFFCU that the Debtor would not cooperate with completing the claim form.

34.     Moreover, PFFCU learned that the Debtor had not listed PFFCU as the loss payee for the Vehicle with GEICO; therefore, PFFCU lacked standing to assert a claim to GEICO itself and GEICO denied PFFCU's claim.

35.     As a result of the Debtor's failure to comply with Pennsylvania insurance laws by listing PFFCU as the lienholder with GEICO and her failure to promptly inform PFFCU that the Vehicle was not in her possession, her failure to submit a claim to GEICO and her failure to complete the GEICO claim form to the best of her knowledge, PFFCU was denied the ability to repossess the Vehicle and prevent the auction thereof and was precluded from submitting a claim to GEICO to recover insurance proceeds.

36.     As a result of Debtor failing to list PFFCU as loss payee on her motor vehicle insurance, failure to submit a claim or cooperate with GEICO to complete a claim form and failure to promptly notify PFFCU that she was not in possession of the Vehicle, PFFCU lost the ability to recover the balance of its Auto Loan from GEICO and lost its collateral, the Vehicle.

## COUNT ONE
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

37.     PFFCU hereby incorporates by reference the preceding paragraphs as if set forth in full herein.

38.     The Debtor was entrusted with the proceeds of the Auto Loan in exchange for which she promised and represented that she would use the proceeds thereof to purchase the Vehicle, that the Auto Loan would be secured by the Vehicle, that PFFCU would be listed as the loss payee under the Debtor's insurance policy covering the Vehicle, and that the Debtor would

repay the Auto Loan and comply with the terms of the Loan Agreement to protect PFFCU's security interest in the Vehicle.

39.    The Debtor obtained and benefitted from PFFCU's Auto Loan.

40.    PFFCU relied upon the Debtor's statements in the Loan Agreement that the Debtor would list PFFCU as loss payee under the Debtor's insurance policy, would not subject the Vehicle to misuse, seizure or confiscation, would not transfer the Vehicle without PFFCU's permission and, if the vehicle was damaged, destroyed or missing, would still pay the balance of the Auto Loan.  All of these representations of the Debtor were materially false.

41.    The Debtor affirmatively failed to list PFFCU as loss payee under the GEICO insurance policy, precluding PFFCU from having standing to submit a claim to recover any portion of the balance of the Auto Loan.

42.    The Debtor did not inform PFFCU of the whereabouts of the Vehicle or that the Vehicle was missing.

43.    The Debtor affirmatively failed to retrieve the Vehicle when she received notice that the Vehicle was located in Alabama and failed to immediately inform PFFCU of the same in time for PFFCU to complete a repossession thereof.

44.    By Debtor's affirmative acts and omissions, the Debtor intended to unlawfully and permanently deprive PFFCU of its money, security interest and its collateral.

45.    The Debtor's actions caused damage to PFFCU by precluding PFFCU from being able to submit an insurance claim to GEICO and depriving PFFCU of the ability to retrieve its collateral.

WHEREFORE, PFFCU respectfully requests the entry of a judgment in its favor and against the Debtor as follows: (a) determining that its claims against the Debtor relating to the

Auto Loan are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); (b) awarding attorney's fees and costs; and (c) awarding such other relief as this Court deems just and proper.

**COUNT TWO**
**NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)**

46.     PFFCU hereby incorporates by reference the preceding paragraphs as if set forth in full herein.

47.     The Debtor was aware of her obligation to list PFFCU as loss payee under her motor vehicle insurance policy and was aware of her obligation not to transfer the Vehicle without PFFCU's permission or subject the Vehicle to misuse, seizure or confiscation.

48.     The Debtor's false representations, affirmative acts and material omissions caused willful and malicious injury to PFFCU, namely by depriving PFFCU of its security interest in the Vehicle, ability to submit an insurance claim to GEICO and its ability to retrieve the Vehicle before it was allegedly sold at auction.

49.     The Debtor knew that her actions would certainly deprive PFFCU of the balance of the Auto Loan, its security interest and its collateral, the Vehicle.

50.     The Debtor's failure to list PFFCU as loss payee under her GEICO insurance policy, failure to promptly notify PFFCU when she learned the Vehicle was in Alabama, failure to make arrangements for the Vehicle to be returned to her from Alabama, and failure to complete the GEICO claim form to protect PFFCU's collateral willfully and maliciously deprived PFFCU of its property without just cause or excuse.

WHEREFORE, PFFCU respectfully requests the entry of a judgment in its favor and against the Debtor as follows: (a) determining that its claim against the Debtor relating to the Auto Loan is not dischargeable pursuant to 11 U.S.C. § 523(a)(6); (b) awarding attorney's fees and costs; and (c) awarding such other relief as this Court deems just and proper.

DILWORTH PAXSON LLP

Dated: October 1, 2025

/s/ Anne M. Aaronson
Anne M. Aaronson
1650 Market Street, Suite 1200
Philadelphia, PA  19103
(215) 575-7000
(215) 575-7200 (fax)
Attorneys for Police and Fire Federal Credit
Union